# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MIGUEL A. MATEO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-cv-00052 |
| ) | Judge Trauger / Frensley |
| THE STATE OF TENNESSEE, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Defendants' Motion to Dismiss Plaintiff's official capacity claims against them.[1] Docket No. 21. Along with their Motion, Defendants have contemporaneously filed a supporting Memorandum of Law, arguing that "Plaintiff's Title VII, New York state law, and Section 1983 claims fail as a matter of law" because: (1) Plaintiff failed to exhaust his Title VII administrative remedies against five of the six Defendants, "and otherwise fails to state a claim for relief under that statute"; (2) Defendants are immune from claims under New York law, and there is no claim under New York law for conduct allegedly occurring in Tennessee; and (3) Defendants face no liability under 42 U.S.C. §1983, and any claim under that statute would be time-barred. Docket No. 21-1.

Plaintiff has not responded to the instant Motion.

---

[1] Plaintiff's individual capacity claims against the individual Defendants (Taylor, Heaney, and Law) were dismissed on November 16, 2018, via a joint Stipulation of Dismissal filed pursuant to Fed. R. Civ. P. 41(a). Docket No. 20.

Plaintiff filed his First Amended Complaint in this action on January 2, 2018,[2] arguing that Defendants violated his rights under Title VII of the Civil Rights Act of 1964 when they discriminated against him, harassed him, and retaliated against him on account of his race, religion, and national origin, violated his rights under the "whistleblower doctrine," retaliated against him for "engaging in the protected activity of formally complaining of the said discrimination," and created a hostile work environment which "[he] was forced to endure." Docket No. 5. Plaintiff additionally avers that Defendants violated his rights under New York law and 42 U.S.C. §1983 by violating his equal protection rights as well as "applicable provisions of Human Rights Laws." *Id.* Plaintiff seeks declaratory relief, as well as $180,000,000.00 in damages. *Id.*

For the reasons discussed below, the undersigned recommends that Defendants' Motion to Dismiss (Docket No. 21) be GRANTED and that this action be DISMISSED.

## II. Factual Allegations of Plaintiff's First Amended Complaint

Plaintiff, an African-American male who is a dual citizen of the Dominican Republic and the United States, became employed in the Long-Term Services and Support department ("LTSS") of the State of Tennessee Health Care Finance and Administration ("HCFA") unit as the Director of Audits and Compliance ("DAC") on October 5, 2015. Docket No. 5, ¶¶ 13, 21, 23. Plaintiff was employed in the Nashville, Tennessee office of HCFA. *Id.* at ¶ 13.

Defendants Jay Taylor, Nancy Heaney, and Virginia Law are LTSS employees: Mr. Taylor is a Deputy in Plaintiff's department, and Ms. Heaney and Ms. Law are human resources

---

[2] Originally filed in the Southern District of New York, Plaintiff's case was transferred to this Court on January 17, 2018. *See* Docket No. 1.

personnel. *Id.* at ¶¶ 16-18.

Within "hours" of arriving on his first day, Plaintiff "discovered the discriminatory practices in LTSS were rampant and sanctioned by its leadership," including the DOHR. *Id.* at ¶ 23. "From the moment of [his] arrival at the building and almost immediately, [Plaintiff] was subjected to animus harbored toward race, national origin, in the LTSS Department." *Id.* at ¶ 25.

Beginning mid-October 2015, Plaintiff initiated meetings and met weekly with each of his staff members (specifically, Marcus Tubbs and his unit, Idella Baldwin and her unit, and Plaintiff's assistants). *Id.* at ¶ 26. For the first couple of weeks, Plaintiff met with Idella Baldwin to "address some issues and areas of concerns [*sic*] reported to [him] by Jay Taylor; whereby [his] immediate Manager, Lynnese Philalom became aware of [his] involving [*sic*] and conversations with Idella Baldwin." *Id.* During Plaintiff's weekly meetings and conversations with Ms. Baldwin, Ms. Baldwin would provide Plaintiff with "a background history of the unit and Mr. Taylor and his alleged racist patterns." *Id.* Plaintiff then drafted a report of the harassment and hostile work environment alleged by Ms. Baldwin, but Plaintiff never submitted the report because Ms. Baldwin resigned while Plaintiff was on vacation in December 2015. *Id.*

"Soon after" Ms. Baldwin's resignation, Mr. Taylor "refocused his attention" on Plaintiff and Plaintiff was subjected to a hostile work environment. *Id.* at ¶ 27. Plaintiff made his "immediate supervisor, Lynnese Philalom, and DOHR aware of the said initiated harassment, tactics and attacks upon [Plaintiff's] person daily; however, such behavior was condoned by LTSS and verified by ignoring and retaliating against [him]." *Id.*

On May 24, 2016, Plaintiff had his final meeting with Defendants, which Ms. Heaney and Ms. Law attended. *Id.* at ¶ 29. During the meeting, Plaintiff lodged a formal complaint about the

3

harassment and hostile work environment he was subjected to, but "to no avail," as Ms. Heaney and Ms. Law "down played the hostile work environment Plaintiff was subjected to." *Id.* Plaintiff "sought the guidance of [his] Direct manger [*sic*] and DOHR and during his last meeting with Defendants, DOHR, he broke down in tears . . . as he felt hopeless." *Id.* Plaintiff "had nowhere to seek help as Defendants made it their position to downplay [his] complaints and did not aided [*sic*] in the[m]." *Id.*

On June 9, 2016, Plaintiff was released from his employment with CDFA. *Id.* at ¶¶ 28, 29. On or about July 15, 2016, Plaintiff filed his Charge of Discrimination ("Charge") against the "State of Tennessee Health Care Finance and Administration" with the Equal Employment Opportunity Commission ("EEOC"). Docket No. 21-1, Ex. A. Plaintiff's Charge alleges discrimination based upon race, color, national origin, and retaliation.[3] *Id.* The allegations of Plaintiff's Charge, in their entirety, are as follows:

> I was hired by the above-named employer as a Division Director. The company employs at least 15 employees.
>
> I informed upper management of racial issues taking place in my department. After I reported the issues an employee was having, I began to be harassed as well. Derogatory remarks regarding my race were made to me, and the issues of racial discrimination in the workplace were never addressed. I was eventually terminated on June 9, 2016, for false reasons.
>
> I believe that I have been discriminated and retaliated against due to my race (Black) and national origin (Dominican Republic), in violation of Title VII of the Civil [R]ights Act of 1964, as amended.

*Id.*

---

[3] Although he also alleges herein discrimination based upon religion, he did not so allege in his EEOC Charge.

The EEOC issued Plaintiff's Right to Sue letter on September 29, 2017. Docket No. 5, ¶ 11. Plaintiff filed the instant action on December 4, 2017. Docket No. 1.

### III. Law and Analysis

**A. Motion to Dismiss - Fed. R. Civ. P. 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the

5

> doors of discovery for plaintiff armed with nothing more than
> conclusions. Second, only a complaint that states a plausible claim
> for relief survives a motion to dismiss . . . . Determining whether a
> complaint states a plausible claim for relief will, as the Court of
> Appeals observed, be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common
> sense. . . . But where the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct, the
> complaint has alleged - but it has not "show[n]" - "that the pleader
> is entitled to relief."

556 U.S. at 678-79 (citations omitted).

## B. Title VII of the Civil Rights Act of 1964

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part:

> It shall be an unlawful employment practice for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

Federal courts do not have jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998)

(*citing Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544-45 (6th Cir. 1991)). Thus, as a prerequisite to bringing a Title VII discrimination claim in federal court, a claimant is required to file a charge of discrimination or retaliation with the EEOC and is precluded from seeking judicial review until the Commission has made a final disposition of his claim. 42 U.S.C. § 2000e-5. *See also, United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554, 97 S. Ct. 1885, 1887, 52 L. Ed. 2d 571 (1977). The wording of the allegations in the EEOC charge does not, however, have to be exact or all-encompassing; rather, the court may consider allegations not explicitly stated in the EEOC charge if those allegations could reasonably be expected to grow out of the charge of discrimination. *Tipler v E. I. du Pont de Nemours & Co.*, 433 F.2d 125, 131 (6th Cir. 1971) (*citing Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465-66 (5th Cir. 1970); *King v. Georgia Power Co.*, 295 F.Supp. 943 (N.D. Ga. 1968)).

**1. Discrimination**

In order to establish a prima facie case of discrimination in violation of Title VII, a plaintiff must prove that,

1) he is a member of a protected class;

2) he was qualified for his job and performed it satisfactorily;

3) despite his qualifications and performance, he suffered an adverse employment action;[4] and

4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.

---

[4] An adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885-86 (6th Cir. 1996).

7

*Johnson v. University of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  (Footnote added.)

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence that would support an inference of discrimination.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000), *citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997).  "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct evidence approach, once the plaintiff introduces evidence that the employer terminated him because of his protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination.  *Johnson*, 215 F.3d at 572, *citing Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)).

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).  The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a prima facie case of discrimination.  *Id.*  If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.  *Id.*  If the

defendant carries this burden, the plaintiff must then prove that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

### 2. Retaliation

An employer may not retaliate against an employee because he has opposed an unlawful employment practice, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3(a). A prima facie case of retaliation requires a plaintiff to demonstrate that:

1.) he engaged in a protected activity;

2.) the defendant knew that the plaintiff was exercising protected rights;

3.) the plaintiff suffered an adverse employment action or was subjected to severe or pervasive retaliatory harassment by a supervisor; and

4.) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Little v. BP Exploration and Oil Co.,* 265 F.3d 357, 363 (6th Cir. 2001); *Morris v. Oldham Co. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Retaliation claims are evaluated under the *McDonnell Douglas-Burdine* tripartite test

discussed above. *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 862 (6th Cir. 1997).

### 3. Hostile Work Environment

In order to demonstrate a hostile work environment, a plaintiff must demonstrate that:

    1.)    he was a member of a protected group;

    2.)    he was subject to unwelcome harassment;

    3.)    the harassment was based on race;

    4.)    the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and

    5.)    Defendants knew or should have known about the harassment and failed to act.

*See Williams v. CSX Transp. Co.,* 643 F.3d 502, 511 (6th Cir. 2011); *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986).

In analyzing this issue, courts should look to the totality of the circumstances and consider: (1) the frequency or the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993); *see also, Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 707 (6th Cir. 2007).

### C. 42 U.S.C. § 1983

Plaintiff alleges that Defendants violated his Fourteenth Amendment constitutional rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 5. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

> thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**D.  The Case at Bar**

Although Defendants seek dismissal on either exhaustion or failure to state a claim grounds, the undersigned agrees that Plaintiff's First Amended Complaint fails to state a claim upon which relief may be granted and will analyze Plaintiff's claims accordingly.

As has been discussed, Plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of the discrimination, or by proving circumstantial evidence which would support an inference of discrimination. *Johnson*, 215 F.3d at 572. A prima facie case of discrimination based upon race or national origin requires that Plaintiff establish that,

(1) he is a member of a protected class; (2) he is qualified for her job and performed it satisfactorily; (3) despite his qualifications and performance, he suffered an adverse employment action; and (4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside the protected class. *Johnson*, 215 F.3d at 572-73; *Perry*, 209 F.3d at 601.

Taking the well-pled factual allegations of Plaintiff's First Amended Complaint as true, as the undersigned must do at this stage of the proceedings, Plaintiff has not alleged that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside the protected class. Absent the pleading of such allegation, Plaintiff simply cannot establish the requisite elements of a discrimination action and these claims should be dismissed.

Turning to Plaintiff's retaliation claim, as has been noted, a prima facie case of retaliation requires Plaintiff to demonstrate that: (1) he engaged in a protected activity; (2) Defendants knew that he was exercising his protected rights; (3) he suffered an adverse employment action or was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Little,* 265 F.3d at 363; *Morris*, 201 F.3d at 792.

Again taking the well-pled factual allegations of Plaintiff's First Amended Complaint as true, as the undersigned must do at this stage of the proceedings, Plaintiff has not alleged any facts supporting a causal connection between the protected activity of reporting workplace harassment/misconduct and his being fired and/or harassed. Plaintiff's allegations of retaliation are wholly conclusory, and thus are insufficient to overcome a motion to dismiss. Absent the

factual pleading of such causal connection, Plaintiff simply cannot establish the requisite elements of a retaliation action and this claim should be dismissed.

Regarding Plaintiff's hostile work environment claim, as has been discussed, in order to demonstrate a hostile work environment, Plaintiff must demonstrate that: (1) he was a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (5) Defendants knew or should have known about the harassment and failed to act. *See Williams v. CSX Transp. Co.,* 643 F.3d 502, 511 (6th Cir. 2011); *Vinson,* 477 U.S. at 67. In so analyzing, the undersigned will look to the totality of the circumstances and consider: (1) the frequency or the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Harris,* 510 U.S. at 23; *see also, Clay*, 501 F.3d at 707.

Although Plaintiff, in his First Amended Complaint, alleges that he was subjected to a hostile work environment, as can be seen in the factual allegations set forth in Section II above, his allegations are entirely conclusory. Plaintiff fails to plead any specific factual allegations that can satisfy the requisite elements of his claim. Accordingly, Plaintiff's hostile work environment claims should be dismissed.

Inasmuch as Plaintiff avers that, pursuant to 42 U.S.C. § 1983, Defendants violated his Equal Protection rights under the Fourteenth Amendment, official capacity claims against Defendants Taylor, Heaney, and Law are actually claims against their employer, which is the State of Tennessee. 42 U.S.C. § 1983 authorizes the imposition of liability against every

"person" who, acting under color of state law, violates another person's federally protected rights. *See* 42 U.S.C. § 1983. The law is well-settled that a state is not a "person" within the meaning of § 1983. *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Clark v. Kentucky*, 229 F.Supp.2d 718, 722 (E.D. Ky. 2002). Because the State of Tennessee is not a "person" subject to suit for damages under 42 U.S.C. § 1983, Plaintiff has failed to state a claim upon which relief can be granted; accordingly, he cannot sustain this claim.

Additionally, in light of the undersigned's recommendation that Defendant's Motion to Dismiss be granted, the undersigned further recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claims, and those claims should be dismissed without prejudice. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).

### IV.  Conclusion

For the reasons set forth above, the undersigned finds that Plaintiff has failed to state a claim for which relief may be granted under either Title VII or § 1983. Because the undersigned finds that Plaintiff cannot sustain his federal claims, the undersigned recommends that this Court not exercise pendent jurisdiction over Plaintiff's New York claims. The undersigned therefore recommends that Defendants' Motion to Dismiss (Docket No. 21) be GRANTED, and that this action be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any

response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge